The Honorable Rush B. Deacon, President Arkansas Development Finance Authority 100 Main, Suite 200 P.O. Box 8023 Little Rock, AR 72203-8023
Dear Mr. Deacon:
I am writing in response to your request for my opinion on the following question:
 Does the issuance by the Arkansas Fidelity Bond Trust Fund of a "Blanket Dishonesty Bond" to the Arkansas Development Finance Authority ("ADFA") relieve the ADFA board members of having to purchase individual fidelity bonds pursuant to A.C.A. § 15-5-206?
RESPONSE
In my opinion, the answer to your question is, in all likelihood, "yes."
Section 15-5-206 of the Arkansas Code, which relates to the bond-issuing authority of the ADFA, provides:
 (a) Before the issuance of any bonds, each member of the board of directors of the authority shall execute a surety bond in the penal sum of two hundred fifty thousand dollars ($250,000) and the president of the authority shall execute a surety bond in the penal sum of two hundred fifty thousand dollars ($250,000), each surety bond to be conditioned upon the faithful performance of the duties of the office by that board member or president, as the case may be, to be executed by a surety company authorized to transact business in the State of Arkansas, as surety, and to be approved by the Attorney General.
 (b) At all times after the issuance of any bonds by the authority, each member of the board of directors of the authority shall maintain such surety bonds in full force and effect.
(c) All costs of such surety bonds shall be borne by the authority.
However, the operation of this 1985 statute is suspended for all eligible entities and individuals electing to participate in the Self-Insured Fidelity Bond Program, which the legislature authorized in 1987. A.C.A. § 21- 2-701 et seq. The eligibility of the ADFA board members and president to participate in the Fidelity Bond Program is established in the following definitions of covered individuals set forth at A.C.A. §21-2-702:
 (5) "State officers and employees" means all elected and appointed salaried officials of the state and their salaried state employees, the salaried officials and salaried employees of all state boards and commissions, members of the General Assembly, and nonsalaried appointed members of the various state boards and commissions;
 (6) "State public official" or "state public employee" means any elected or appointed salaried officer of the State of Arkansas and the salaried governmental employees of that elected or appointed officer, members of the General Assembly, and the nonsalaried members of the various state boards and commissions. . . .
(Emphasis added.) The ADFA board members are nonsalaried appointees of a state commission, A.C.A. § 15-5-202, and the president is a board employee, A.C.A. § 15-5-203(b), which clearly locates them within the just recited definitions. Subsection 15-5-202(e) of the Code further dictates that board members may be reimbursed in accordance with A.C.A. § 25-16-901 et seq. a subchapter that applies exclusively to "state boards." Indeed, the ADFA is expressly named as a "state board" in A.C.A. § 25-16-903(9) (Supp. 1999), which authorizes payment of a $50 stipend to each board member per meeting attended.[1]
As previously noted, A.C.A. § 21-2-703 expressly provides that participation in the Self-Insured Fidelity Bond Program absolutely suspends any otherwise applicable statutory bond requirements:
 (a) The fidelity bond coverage provided under this subchapter shall be in lieu of all statutorily required bonds for the various public officers, officials, and employees participating in the self-insured Fidelity Bond Program. The various laws specifically requiring surety bonds or blanket bonds for the respective public officials, officers, and employees shall not be applicable so long as the fidelity bonds as provided in this subchapter are in effect covering the officials, officers, and employees.
 (b) In the event coverage shall cease to be provided for any or all of the officials, officers, or employees pursuant to this subchapter, the laws currently in effect providing for surety bonds or blanket bonds shall again become applicable to the officials, officers, and employees.
 Given ADFA's participation in the Fidelity Bond Program, this statute would appear to suspend any obligation AFDA board members might have under A.C.A. § 154-5-206.
However, my analysis is complicated somewhat by a discrepancy between the scope of coverage recited in the Blanket Dishonesty Bond attached to your request and the scope of coverage required by statute under the Fidelity Bond Program. The Blanket Dishonesty Bond provides in pertinent part:
 In consideration of the agreed premium, the Arkansas Fidelity Bond Trust Fund as administered by the Governmental Bonding Board (the "Surety"), hereby agrees to indemnify the Insureds against actual losses which the Insureds shall sustain or for which the Insureds shall incur liability to any other agency through fraudulent or dishonest act or acts committed by any Employee, Employees, Official or Officials of the Insureds, acting alone or in collusion with others. The amount of the indemnity on each occurrence shall be limited to a maximum of Two Hundred Fifty Thousand ($250,000.00). Each occurrence shall be subject to a One Thousand Dollar ($1,000.00) deductible.
By contrast, A.C.A. § 21-2-704(b)(1) provides:
 The fidelity bond coverage provided by the self-insured Fidelity Bond Program shall cover actual losses sustained by the participating governmental entities as defined in § 21-2-702 through any fraudulent or dishonest act or acts committed by any of the officials or employees, acting alone or in collusion with others, during the bond period to an amount not exceeding three hundred thousand dollars ($300,000) per occurrence.
In comparing these two, it is clear that the Blanket Dishonesty Bond diverges from the statutory requirements in two respects: (1) it imposes a $1,000 deductible that is mentioned nowhere in the statute; and (2) it caps the liability for indemnity at a figure $50,000 below that prescribed in the statute.
Based on the foregoing, even though the Blanket Dishonesty Bond attached to your request appears to have been issued and administered as directed by statute, see A.C.A. § 21-2-701 et seq., the limitations in the scope of its coverage raise a question whether it sufficiently complies with the statute to preempt any other statutory bonding requirement. Section21-2-703(a) of the Code provides that "[t]he fidelity bond coverageprovided under this subchapter shall be in lieu of all statutorily required bonds . . . " (emphasis added). In my opinion, notwithstanding what appears to be an inadvertent divergence in the Blanket Dishonesty Bond from the amount of coverage dictated by statute, the unique self-insured coverage provided by the bond is nevertheless of the category "provided under this subchapter." I consequently believe issuance of the Blanket Dishonesty Bond very likely cut off other statutory bonding requirements. Any doubts on this matter could be resolved by renegotiating the terms of the bond to provide coverage in the amount dictated by statute.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] I should note that the United States District Court for the Eastern District of Arkansas, in the case of R.M. Hatcher Co. L.L.C. et al.v. Arkansas Development Finance Authority, Case No. LR-C-99-307, held that ADFA is not an "alter ego" of the state that might avoid suit by invoking Eleventh Amendment sovereign immunity. The court based its ruling primarily on the fact that any judgment against ADFA would not be paid out of the state treasury. Order dated November 22, 1999. However, in my opinion this holding in no way undermines the conclusion that the ADFA board is a state board eligible to participate in the Fidelity Bond Program.